UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| DEVIN DROBSCH, individually and on behalf of all others similarly situated,<br><br>v.<br><br>PEPSICO, INC. | Case No. __2:22-cv-550__<br>FED. R. CIV. P. 23 Class Action |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, PepsiCo's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout PepsiCo's organization.

3. As a result, PepsiCo's workers who were not exempt from the overtime requirements under Pennsylvania law, were not paid for all hours worked or were not paid their proper overtime premium after the onset of the Kronos hack.

4. Devin Drobsch is one such PepsiCo worker.

5. PepsiCo could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, PepsiCo used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. PepsiCo pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. PepsiCo's failure to pay wages, including proper overtime, for all hours worked violates the Pennsylvania Minimum Wage Act (PMWA), 43 Pa. Stat. Ann. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law (WPCL), 43 Pa. Stat. Ann. § 260.1, *et seq.*

10. Drobsch brings this lawsuit to recover these unpaid overtime wages and other damages owed by PepsiCo to him and the non-overtime-exempt workers like him, who were the ultimate victims of not just the Kronos hack, but also PepsiCo's decision to make its front line workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by PepsiCo to all these workers, along with the penalties, interest, and other remedies provided by Pennsylvania law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

14. Drobsch worked for PepsiCo in this District.

## PARTIES

15. **Plaintiff Devin Drobsch** is a natural person.

16. Drobsch is a resident and citizen of Pennsylvania.

17. Drobsch has been, at all relevant times, an employee of PepsiCo.

18. Drobsch has worked for PepsiCo since October 2021.

19. Tschudy has, at all relevant times, worked for PepsiCo in Pennsylvania.

20. Drobsch represents a class of similarly situated workers under Pennsylvania law pursuant to Federal Rule of Civil Procedure 23. This "Pennsylvania Class" is defined as:

> **All current or former hourly and salaried employees of PepsiCo, including its subsidiaries and alter egos, who were not exempt from overtime pay and who worked for PepsiCo in Pennsylvania at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

21. Throughout this Complaint, the Pennsylvania Class Members are also referred to as the "Similarly Situated Workers."

22. **Defendant PepsiCo, Inc. ("PepsiCo")** is a North Carolina corporation.

23. PepsiCo maintains its headquarters and principal place of business in New York.

24. PepsiCo conducts business in a systematic and continuous manner throughout Pennsylvania and this District.

25. PepsiCo may be served by service upon its registered agent, **CT Corporation System, 600 N. 2nd St., #401, Harrisburg, PA 17101**, or by any other method allowed by law.

26. At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

27. At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

28. At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

29. PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, Drobsch and the Similarly Situated Workers.

30. PepsiCo and its respective subsidiaries and alter egos are joint employers for purposes of Pennsylvania law.

### FACTS

31. PepsiCo is a food, snack, and beverage corporation.

32. Many of PepsiCo's employees are paid by the non-overitme-exempt hourly and salaried workers.

33. Since at least 2021, PepsiCo has used timekeeping software and hardware operated and maintained by Kronos.

34. On or about December 11, 2021, Kronos was hacked with ransomware.

35. The Kronos interfered with its clients, including PepsiCo's, ability to use Kronos's software and hardware to track hours and pay employees.

36. Since the onset of the Kronos hack, PepsiCo has not kept accurate track of the hours that Drobsch and Similarly Situated Workers have worked.

37. Instead, PepsiCo has used various methods to estimate the number of hours Drobsch and Similarly Situated Workers work in each pay period.

38. For example, PepsiCo issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

39. This means that employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

40. Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

41. Many employees were not even paid their non-overtime wages for hours worked before 40 in a workweek.

42. Drobsch is one such employee.

43. Instead of paying Drobsch for the hours he actually worked (including overtime hours), PepsiCo simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Drobsch's actual hours worked and regular pay rates.

44. In some instances, Drobsch was paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x the regular rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

45. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

46. PepsiCo knows they have to pay proper overtime premiums to non-exempt hourly and salaried employees.

47. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

48. PepsiCo knows it has to pay the wages it agreed to pay its employees.

49. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

50. PepsiCo could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

51. Instead of accurately tracking hours and paying employees wages and overtime, PepsiCo decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

52. It was feasible for PepsiCo to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

53. But they didn't do that.

54. In other words, PepsiCo pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

55. Drobsch is one of PepsiCo's employees who had to shoulder the burden of this decision by PepsiCo.

56. Drobsch was and is a non-exempt hourly employee of PepsiCo.

57. Drobsch regularly works over 40 hours per week for PepsiCo.

58. Drobsch's normal, pre-Kronos hack hours are reflected in PepsiCo's records.

59. Drobsch had contractual agreement with PepsiCo to pay him for all hours worked.

60. Drobsch's contractual agreement with PepsiCo required him to be paid for all hours worked at an amount equal to his regular rate for hours up to 40 in a workweek, and at an overtime premium of no less than 1.5x his regular rate of pay for hours over 40 in a workweek.

61. Since the Kronos hack, PepsiCo has not paid Drobsch for him actual hours worked each week.

62. Since the hack took place, PepsiCo has not been accurately recording the hours worked by Drobsch and its other workers.

63. Since the Kronos hack, PepsiCo has not paid Holdbert and its other workers pursuant to its contractual agreement with them.

64. Even though PepsiCo has had Drobsch record and submit him hours, PepsiCo have not issued proper payment for all hours worked.

65. Even when PepsiCo has issued payment to Drobsch for any overtime, the overtime is not calculated based on Drobsch's regular rates, as required by Pennsylvania law.

66. PepsiCo was aware of the overtime requirements of Pennsylvania law.

67. PepsiCo nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Drobsch.

68. PepsiCo's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the PMWA.

69. The full overtime wages owed to Drobsch and the Similarly Situated Workers became "unpaid" when the work for PepsiCo was done—that is, on Drobsch and the Similarly Situated Workers' regular paydays.

70. At the time PepsiCo failed to pay Drobsch and the Similarly Situated Workers in full for their overtime hours by their regular paydays, PepsiCo became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under Pennsylvania law.

71. In other words, there is no distinction between late payment and nonpayment of wages under the law.

72. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law.

73. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to PepsiCo's acts and omissions resulting in the unpaid wages in the first place.

74. Drobsch and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by PepsiCo under Pennsylvania law.

## CLASS ACTION ALLEGATIONS

75. Drobsch incorporates all other allegations.

76. The illegal practices PepsiCo imposed on Drobsch were likewise imposed on the Pennsylvania Class Members.

77. Numerous other individuals who worked for PepsiCo were were not properly compensated for all hours worked, as required by Pennsylvania law.

78. The Pennsylvania Class is so numerous that joinder of all members of the class is impracticable.

79. PepsiCo imposed uniform practices and policies on Drobsch and the Pennsylvania Class members regardless of any individualized factors.

80. Based on him experience and tenure with PepsiCo, as well as coverage of the Kronos hack, Drobsch is aware that PepsiCo's illegal practices were imposed on the Pennsylvania Class members.

81. Pennsylvania Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

82. Pennsylvania Class members were all not paid their contractually agreed wages.

83. PepsiCo's failure to pay wages and overtime compensation in accordance with Pennsylvania law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

84. PepsiCo's failure to pay contractually agreed wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

85. Drobsch's experiences are therefore typical of the experiences of the Pennsylvania Class members.

86. Drobsch has no interest contrary to, or in conflict with, the members of the Pennsylvania Class. Like each member of the proposed class, Drobsch has an interest in obtaining the unpaid wages and other damages owed under the law.

87. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

88. Absent this action, many Pennsylvania Class members likely will not obtain redress of their injuries and PepsiCo will reap the unjust benefits of violating Pennsylvania law.

89. Furthermore, even if some of the Pennsylvania Class members could afford individual litigation against PepsiCo, it would be unduly burdensome to the judicial system.

90. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

91. The questions of law and fact common to each of the Pennsylvania Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Pennsylvania Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

   b. Whether PepsiCo's failure to pay overtime at the rates required by law violated the Pennsylvania Minimum Wage Act;

   c. Whether PepsiCo failed to pay Pennsylvania Class Members their contractually agreed wages; and

   d. Whether PepsiCo has any good faith defense to paying the contractually agreed wages.

92. Drobsch's claims are typical of the Pennsylvania Class members. Drobsch and the Pennsylvania Class members have all sustained damages arising out of PepsiCo's illegal and uniform employment policies.

93. Drobsch knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

94. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

### FIRST CAUSE OF ACTION—VIOLATIONS OF THE PMWA

95. Drobsch incorporates all other allegations.

96. The conduct alleged in this Complaint violates the PMWA.

97. PepsiCo was and is an "employer" within the meaning of the PMWA.

98. At all relevant times, PepsiCo employed Drobsch and the other Pennsylvania Class Members as "employees" within the meaning of the PMWA.

99. The PMWA requires an employer like PepsiCo to pay overtime to all non-exempt employees.

100. Drobsch and the other Pennsylvania Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

101. Within the applicable limitations period, PepsiCo had a policy and practice of failing to pay proper overtime to the Pennsylvania Class Members for their hours worked in excess of 40 hours per week.

102. As a result of PepsiCo's failure to pay proper overtime to Drobsch and the Pennsylvania Class Members for work performed in excess of 40 hours in a workweek, Defendants violated the PMWA.

103. Drobsch and the Pennsylvania Class Members are entitled to overtime wages under the PMWA in an amount equal to 1.5 times their rates of pay, attorney's fees, costs, penalties, and all other legal and equitable relief provided under the PMWA.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE WPCL

104. Drobsch incorporates all other allegations.

105. The conduct alleged in this Complaint violates the WPCL.

106. PepsiCo was and is an "employer" within the meaning of the WPCL.

107. At all relevant times, PepsiCo employed Drobsch and the other Pennsylvania Class Members as "employees" within the meaning of the WPCL.

108. The WPCL requires an employer like PepsiCo to pay wages to its employees on their regularly scheduled paydays.

109. Drobsch and the Pennsylvania Class Members had oral or written contracts with PepsiCo.

110. Whether the contractual agreements of Drobsch and the Pennsylvania Class Members were formal contracts, collective bargaining agreements, or oral, does not alter PepsiCo's obligations under the WPCL.

111. Drobsch and the Pennsylvania Class Members' status as at-will employees or otherwise is irrelevant to whether they had an enforceable contract for wages with PepsiCo under the WPCL.

112. Drobsch and the Pennsylvania Class Members had regularly scheduled paydays with PepsiCo.

113. PepsiCo failed to pay Drobsch and the Pennsylvania Class Members their contractually agreed wages on their regularly scheduled payday.

114. PepsiCo had no good faith basis for its failure to pay contractually agreed wages to Drobsch and the Pennsylvania Class Members.

115. As a result of PepsiCo's failure to pay agreed wages to Drobsch and the Pennsylvania Class Members on their regularly scheduled paydays, Drobsch and the Pennsyvlania Class Members are entitled to recover unpaid wages and fringe benefits. WPCL, 43 Pa. Stat. Ann. § 260.10.

116. Because PepsiCo failed to pay wages to Drobsch and the Pennsylvania Class Membes without any good faith basis, Drobsch and the Pennsyvlania Class Members are entitled to recover liquidated damages as provided for by the WPCL. WPCL, 43 Pa. Stat. Ann. § 260.10.

117. Drobsch and the Pennsylvania Class Members are also entitled to attorney's fees, costs, penalties, and all other legal and equitable relief provided under the WPCL. WPCL, 43 Pa. Stat. Ann. § 260.10.

### RELIEF SOUGHT

Drobsch prays for judgment against PepsiCo as follows:

a. For an order certifying a class action for the Pennsylvania law claims;

b. For an order finding PepsiCo liable for violations of state wage laws with respect to Drobsch and all Pennsylvania Class members covered by this case;

c. For a judgment awarding all unpaid wages, fringe benefits, liquidated damages, and penalties, to Drobsch and all Pennsylvania Class members covered by this case;

d. For a judgment awarding attorneys' fees to Drobsch and all Pennsylvania Class members covered by this case;

e. For a judgment awarding costs of this action to Drobsch and all Pennsylvania Class members covered by this case;

f. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Drobsch and all Pennsylvania Class members covered by this case; and

g. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***
_____

**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**